**PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,**

v.

**Jerry OJEDA, Defendant-Appellant.**

**No. 84–1140.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1985.

Decided April 16, 1985.

Frances Tydingco-Gatewood, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

J.C. Dierking, Agana, Guam, for defendant-appellant.

Before WALLACE, HUG and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

Defendant Ojeda was convicted for burglary in the Superior Court of Guam. Ojeda appealed his conviction to the appellate division of the district court of Guam, pursuant to 48 U.S.C. § 1424(a). The district court affirmed the conviction. Ojeda now appeals to this court, arguing that his conviction should be reversed due to (1) prosecutorial misconduct; (2) prejudice resulting from the admission of photographs of the stolen jewelry; (3) prejudice resulting from the jury instructions concerning Ojeda's admissions to Christopher; and (4) insufficiency of evidence. We affirm.

FACTS AND PROCEEDINGS BELOW

On December 22, 1981 Mr. Charles Christopher, owner of a house at 15 Paseo de Oro in Tumon, Guam, learned that his home had been burglarized. Christopher promptly drove home from work. As Christopher arrived at the entrance of his street, a maroon convertible carrying three men passed his car. When Christopher reached his house, he discovered that a back window had been broken and jewelry taken.

Later that same afternoon, Guamanian police spotted a maroon convertible parked near a beach hut in East Agana. The

police stopped and frisked three men in the hut: Jerry Ojeda, petitioner; Randy Torres, a juvenile; and David Desoto. Jewelry, including a diamond ring belonging to Christopher's son-in-law, was found on the person of Jerry Ojeda. An orange bag of jewelry was also found in the hut. Ojeda was charged with aiding and abetting a burglary, a violation of section 37.20 of the Guam Criminal Code.

Randy Torres, who pleaded guilty, testified at Ojeda's trial. Torres stated that on December 22, 1981 at Desoto's suggestion, the three friends had decided to drive to Agana. En route, Ojeda turned into Paseo de Oro, the street where Christopher's home was located. At this point Ojeda began pointing out houses saying, "that house, this house". Since it was raining, Ojeda decided to stop the car on the side of the road. Desoto then said that he was going to "check out a friend" and asked Torres to go along with him. The two proceeded to the third house on the road, Christopher's. This was one of the houses that Ojeda had originally pointed out.

Desoto then went to the back of the house, broke in, and called Torres for help. After ten minutes of collecting jewelry, the two men left the house. Desoto then got into the front seat of the car with Ojeda, while Torres got in the back seat. Torres claimed at trial that Ojeda and Desoto were laughing in the front seat as they sped away.

The three men eventually pulled over at a shelter in East Agana. Torres, who had collected jewelry in an orange bag, took the bag with him into the hut. Torres reported that when Ojeda saw the bag in the hut he said, "Lanya, you guys". It was at this point that the officers entered the shelter and promptly frisked and arrested the three men.

Ojeda's primary defense was that he did not have the requisite intent to aid and abet in the burglary and, although he drove the car to Christopher's residence, he did not take part in the burglary nor did he know that it was going on.

## AUTHORITY

There is a paucity of Guam law upon which to rely for authority in this case. Where Guam law is unclear, this circuit has ruled that California cases "are persuasive." *People of the Territory of Guam v. Borja*, 732 F.2d 733, 735 (9th Cir.1984) (*quoting Roberto v. Aguon*, 519 F.2d 754, 755 (9th Cir.1975)), *cert. denied*, — U.S. —, 105 S.Ct. 300, 83 L.Ed.2d 235 (1984). It is appropriate to look at California law not only where questions involve Guam's criminal code provisions, but also Guam's civil code provisions. *Roberto v. Aguon*, 519 F.2d 754, 755 (9th Cir.1975); *Smith v. Lujan*, 588 F.2d 1304, 1306 (9th Cir.1979). Where there is a question concerning the criminal or civil code provisions of Guam law, this court will rely on California law. It should also be noted that the Guam Code of Evidence is identical to the Federal Rules of Evidence. Where evidentiary questions arise reliance will accordingly be placed on interpretations of the Federal Rules or their applicable counterparts under the California Rules of Evidence.

### 1. Prosecutorial Misconduct.

The proper test to judge impermissible comment upon a defendant's right not to testify is whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *United States v. Soulard*, 730 F.2d 1292, 1306 (9th Cir.1984); *United States v. Fleishman*, 684 F.2d 1329, 1343 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982); *United States v. Passaro*, 624 F.2d 938, 944 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 842 (1981).

The record is devoid of any facts supporting petitioner's allegation of impermissible comment on his failure to testify. During closing argument, the prosecutor called attention to Ojeda's admission to Christopher that he had the jewelry and was willing to pay for damages if the

charges were dropped. Referring to this episode, the prosecutor stated, "[i]n light of that it is very difficult to believe that he didn't know what was going on that day. There has been no testimony that he found out that the jewelry in that bag, the jewelry from those boys—he did anything other than go along with it." No objection was made to the statement at the time it was made.

Petitioner claims that this statement was purposely phrased to call attention to his failure to testify. The statement, taken in context, does not evidence an intent to violate petitioner's fifth amendment privilege. The prosecutor merely commented on the general lack of testimony supporting defendant's side of the story. A prosecutor is entitled to comment upon a defendant's failure to present witnesses "so long as ... not phrased as to call attention to defendant's own failure to testify." *Passaro,* 624 F.2d at 944.

In addition, where alleged prosecutorial misconduct is limited to a single isolated statement, did not stress an inference of guilt from silence as a basis of conviction, and was followed by curative instructions, it is harmless beyond a reasonable doubt. *Soulard,* 730 F.2d at 1307; *United States v. Armstrong,* 654 F.2d 1328, 1336 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982).

Taken in the light most generous to defendant, the prosecutor's reference to lack of testimony was at best an indirect reference to defendant's failure to testify. This was an isolated statement to which no objection was made. The presiding judge twice advised the jury that the law never imposes upon the defendant the duty of calling any witnesses or producing any evidence on his own behalf. These cautionary instructions were sufficient to cure any arguable prejudice to the defendant. *See Soulard,* 730 F.2d at 1307.

2. Admission of Photographs.

Evidentiary rulings of a trial court are reviewed for an abuse of discretion.

*United States v. Ordonez,* 737 F.2d 793 (9th Cir.1984) (*citing United States v. Kahan & Lessin Co.,* 695 F.2d 1122, 1124 (9th Cir.1982)); *People of Territory of Guam v. Dela Rosa,* 644 F.2d 1257, 1261 (9th Cir. 1980) (admissibility of photographs is discretionary).

In an attempt to prove that the very ring found on Ojeda belonged to Christopher's son-in-law, and was stolen from the house on December 22, the prosecutor sought to admit photographs of the jewelry so that Christopher could identify the ring in question. Petitioner claims it was error to admit the three photographs of all the stolen jewelry rather than require production of the diamond ring. Petitioner cites section 1004 of the Guam Code of Evidence as authority for this proposition. Section 1004, which is identical to section 1004 of the Federal Rules of Evidence, is also known as the best evidence rule. This rule applies only to written documents or recordings. *United States v. Gonzales-Benitez,* 537 F.2d 1051, 1053 (9th Cir.), *cert. denied,* 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976). The section was never meant to apply in the present situation where photographs of a stolen ring, rather than the ring itself, were displayed to the jury.

Petitioner's contention that the display of a photo of the stolen ring impaired his ability to cross-examine effectively has little merit. The photos were clearly relevant. They depict the ring with the rest of the stolen jewelry. Furthermore, it was established through the testimony of a police officer that all the jewelry exhibited in the photographs consisted of that found on the defendants. There is nothing in the record of the trial proceedings which indicates that requiring the original ring in question would have aided defendant on cross-examination or that the admission of these photos prejudiced defendant.

Petitioner further contends that it was necessary for the government to establish chain of custody for the jewelry in order to admit the photos. Defendant

lacks authority for his claim. Where photographs are concerned "there is a presumption of regularity in the handling of exhibits by public officials." *United States v. Stearns*, 550 F.2d 1167, 1170 (9th Cir.1977) (*quoting United States v. Coades*, 549 F.2d 1303, 1306 (9th Cir.1977)). Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question. Rule 901(b)(1). *See also United States v. Blackwell*, 694 F.2d 1325, 1330–31 (D.C.Cir. 1982). The trial judge did not abuse his discretion in admitting these photographs.

3. Jury Instruction on Ojeda's Admission.

■ The adequacy of a judge's instructions to the jury is measured by reading the instructions as a whole. "The judge's formulation of those instructions or his choice of language is entirely in his discretion, so long as the instructions fairly and adequately cover the issues presented." *United States v. Smith*, 735 F.2d 1196, 1198 (9th Cir.1984); *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir.1982).

At trial Christopher testified that on January 15, 1982 Ojeda approached him with an offer to pay damages if the charges were dropped. During the same discussion Ojeda also told Christopher that it "was his vehicle, and that he did not enter the house but they gave him some jewelry." Ojeda argues that these statements did not amount to an admission of guilt. He further maintains that the trial judge erred in instructing the jury that an offer to compensate could be considered as circumstances tending to show consciousness of guilt.

■ A statement is not hearsay if the statement is offered against a party and is his own statement in either his individual or representative capacity. Rule 801(d)(2)(A). Cases interpreting section 801(d)(2)(A) are in agreement that statements need not be incriminating to be admissions. For statements to constitute admissions they need only relate to the offense. *People v. Perkins*, 129 Cal.App.3d

15, 23, 180 Cal.Rptr. 763, 768 (1982); *People v. Daw*, 267 Cal.App.2d 560, 565, 73 Cal.Rptr. 89, 93 (1968). In *People v. Maxey*, 28 Cal.App.3d 190, 196–98, 104 Cal. Rptr. 466, 469 (1972), the California Supreme Court ruled that an offer of $500 to drop assault charges was relevant to the question of guilt. The court in *Maxey* stated that "[e]vidence of an attempt by a defendant to suppress testimony against himself indicates a consciousness of guilt and is admissible against him." *Id.*

■ Under *Maxey*, Ojeda's offer to compensate is relevant since it may be indicative of a consciousness of guilt. *Perkins*, 129 Cal.App.3d at 23, 180 Cal.Rptr. at 768. The trial court's instructions were not erroneous. *Sablan v. People of the Territory of Guam*, 434 F.2d 837, 839 (9th Cir. 1970).

4. Sufficiency of the Evidence.

In reviewing sufficiency of the evidence, this court must determine whether "viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir.1984); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In order to violate section 37.20 of the Guam Criminal Code one must have entered habitable property with the intent to commit a crime, theft. Section 4.60 states that "a person is guilty of an offense if with the intention of promoting or assisting in the commission of the offense, he induces or aids another person to commit the offense."

■ The sole issue in this case is whether Ojeda knew a burglary was taking place and meant to aid Torres and Desoto in commission of the crime. It is well established that one who stays in an automobile and enables those who are robbing to make a successful getaway is as much a principal and aids and abets the crime as completely as though he were present and

assisted in the actual taking. *People v. Silva*, 143 Cal.App.2d 162, 300 P.2d 25, 30 (1956).

In this case testimony at trial revealed the following: (1) Ojeda parked the car on the street away from the house, as if to avoid suspicion, not in front of the driveway; (2) Torres claimed Ojeda drove away from the scene at a fast speed (although there was testimony from Christopher that he drove away at a moderate speed); (3) Torres testified that Desoto and Ojeda were "just laughing" in the car like two colluding defendants might act after pulling off a heist; (4) jewelry, including a diamond ring belonging to Christopher's son-in-law, was found on the person of Ojeda at the time of arrest, indicating that Ojeda had been paid his share for his assistance; (5) Ojeda tried to pay off Christopher and admitted that it was his car and that he had the jewelry. There was relatively little evidence on the other hand supporting defendant's contention that he did not intend to aid Torres and Desoto. A rational jury could have found that defendant intended to commit the burglary.

AFFIRMED.