972 F.2d 1346
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of Americia, Plaintiff-Appellee,
v.
Jerry William MENEFEE, Defendant-Appellant.
 No. 90-50495.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 2, 1992.*
Decided July 28, 1992.
 
 Before HUG, PREGERSON and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jerry William Menefee appeals his conviction under 18 U.S.C. § 2113(a) for unarmed bank robbery.[1] He raises several claims of error regarding admissibility of evidence. Because we find that the errors made by the district court were not harmless, we reverse the conviction.
 
 BACKGROUND
 
 3
 Jerry Menefee was indicted, tried, and convicted for unarmed robbery of the Security Pacific National Bank in Sun Valley, California. He did not testify at trial. The defense relied heavily on the testimony of his brother, Frederick Menefee, a convicted bank robber, who testified that it was he, not Jerry, who committed the robbery.
 
 
 4
 At trial, the district court allowed the government to cross-examine Frederick at length about his own drug use, his brother Jerry's drug use, Jerry's escape from a halfway house, the arrest of Jerry and himself for being under the influence of heroin on August 24, 1989 (3 days after the bank robbery),[2] and his contact with his brother Jerry both before and after the robbery.
 
 
 5
 Although none of these topics were raised on direct examination of Frederick by defense counsel, the court allowed this testimony over defense objection on two grounds. The record indicates that the court believed that this evidence was relevant to Frederick's credibility as a witness. Further, the court accepted the government's contention that this evidence was relevant to Jerry's motive and opportunity to commit the robbery.
 
 
 6
 The court also permitted testimony by two law enforcement officers concerning the brothers' drug use and Jerry's halfway house escape. Ostensibly this evidence was to rebut the testimony elicited on cross-examination from Frederick regarding Jerry's drug use and to show Jerry's motive and opportunity to commit the robbery. The first officer testified that he arrested Jerry and Frederick on August 24 for being under the influence of heroin. The second officer introduced statements made by Jerry to her concerning his escape from the halfway house and his own drug use.
 
 
 7
 Jerry Menefee contends that the evidence raised on cross-examination of Frederick, and the testimony of the officers concerning Jerry's drug use and escape, is irrelevant and inadmissible for purposes of impeachment of Frederick as a witness, or for showing Jerry's motive or opportunity to commit the crime. Jerry further asserts that the testimony of the law enforcement officer about his own statements made to her is inadmissible hearsay. Moreover, he argues that even if the disputed evidence is otherwise relevant and admissible, its prejudicial effect greatly outweighs any probative value it may have. Finally, Jerry contends that the method of in-court identification used by the trial court was improper and thus further error.
 
 DISCUSSION
 
 8
 We review a district court's admission of evidence for abuse of discretion. United States v. Sarault, 840 F.2d 1479, 1485 (9th Cir.1988). Where we find that an error occurred at trial, we must determine whether that error was harmless. Fed.R.Crim.P. 52(a). The conviction must be reversed if it is more probable than not that the prejudice resulting from the error materially affected the verdict. People v. Cepeda, 851 F.2d 1564, 1567 (9th Cir.1988).
 
 
 9
 I. Impeachment of defense witness Frederick Menefee.
 
 
 10
 Subject to broad discretion of the court, cross-examination is permitted not only to explore a witness's story, but to impeach. Davis v. Alaska, 415 U.S. 308, 316 (1974). However, in the interest of guarding against the dangers of surprise, confusion of the jury's attention, and time-wasting, a witness may not be impeached by producing extrinsic evidence of collateral facts to contradict the witness's assertions about those facts. Edward W. Cleary et al., McCormick on Evidence § 47, at 110 (3d ed. 1984). Collateral facts are those which are not relevant to the substantive issues in the case.[3] The nature of the cross-examination for impeachment purposes is limited by Fed.R.Evid. 608 ("Rule 608"), which governs impeachment of a witness:
 
 
 11
 (a) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
 
 
 12
 (b) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence.
 
 
 13
 Thus, Rule 608(b) provides that "specific instances of conduct of a witness not resulting in a criminal conviction may not be proved by extrinsic evidence solely for the purpose of attacking the credibility of the witness." United States v. Bosley, 615 F.2d 1274, 1276 (9th Cir.1980).
 
 
 14
 In the case at bar, the government offered the testimony of the law enforcement officers as extrinsic evidence to prove that Frederick Menefee was lying. However, whether Frederick was aware that his brother used drugs or escaped from a halfway house was not relevant to the substantive issue of whether Jerry robbed a bank. Thus, it was impermissible to attempt to discredit Frederick's statements that he never saw his brother use heroin and that he was unaware of the drug charge for which Jerry was arrested during their joint arrest. The sole value of the officers' testimony as it pertained to impeachment was to show that Frederick was lying about Jerry's drug use, a matter which was not a substantive issue before the court. The government was limited to showing that Frederick was lying by eliciting contradictory testimony from Frederick himself. This the government was unable to do.
 
 
 15
 As a further means of discrediting Frederick's testimony, the government was allowed to introduce the testimony of a law enforcement officer about statements Jerry made to the officer in December 1989. Jerry contends that these statements, which concern his escape from the halfway house because he had turned in a urine sample which would show his drug use, was inadmissible hearsay.
 
 
 16
 The government asserted, and the trial court accepted, that this evidence was admissible based on Fed.R.Evid. 801(D)(2)(a) ("Rule 801(D)(2)(a)"), which provides that a party's own out of court statement offered against himself is not hearsay. The law is clear that such a statement, termed an admission by a party opponent, is not hearsay. Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir.1985). However, the statement must be offered "against a party" and, to constitute an admission, must "relate to the offense." Id.
 
 
 17
 In the present case, the statements could not be used as an admission against Jerry. To the extent that Jerry's statements to the officer were offered to impeach Frederick, they were not offered "against" Jerry. The government attempts to get around this problem by claiming that because Frederick was Jerry's witness, the statement was in essence being offered against Jerry himself. This reasoning is erroneous. Rule 801(D)(2)(a) applies only to admissions made by the party "offered as evidence against him." Cleary et al., supra, § 262, at 774.
 
 
 18
 II. Admissibility of evidence under Fed.R.Evid. 404(b).
 
 
 19
 The government asserts, in the alternative, that the evidence is admissible to prove Jerry's motive and opportunity to commit the robbery. Rule 404(b) permits evidence of prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 
 
 20
 Our case law holds that this type of character evidence must be relevant under Fed.R.Evid. 401 ("Rule 401") and "must be used to prove a material issue" of consequence. United States v. Ross, 886 F.2d 264, 267 (9th Cir.1989). Under Rule 401, evidence need only have a tendency to prove a fact of consequence to be relevant. Questions of motive and opportunity are accepted as facts of consequence under Rule 404(b). However, prior to admission the evidence must pass the Fed.R.Evid. 403 ("Rule 403") balancing test. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." To pass scrutiny under this test, evidence of motive and opportunity used under Rule 404(b) must go to prove an issue in dispute. United States v. Powell, 587 F.2d 443, 448 (9th Cir.1978).
 
 
 21
 The basic criterion is that the evidence of other crimes must be relevant to prove an issue in the case. The only factual issue in this case was identity.... Powell did not purport to controvert intent, knowledge, or motive.... He sought only to show that the source was not he. When a defendant denies participation in the act ... which constitutes the crime, intent is not a material issue for the purpose of applying Rule 404(b).
 
 
 22
 Id.
 
 
 23
 Jerry's motive was not put in issue by his assertion that Frederick committed the crime. Further, no evidence was offered that Jerry needed the money to support a drug habit, or that he was an addict who had a habit to support.
 
 
 24
 The government counters by contending that Jerry raised the issue of his own motive to rob the bank via the government's cross-examination of Frederick, who testified that he robbed banks to support his drug habit. They reason that because Frederick was motivated by drug addiction, Jerry must also have been. This argument is without logical foundation. First, the defense never raised the issue of Jerry's motivation to do anything. The defense contends that the issue is identity, whether the robbery was committed by Frederick or Jerry. Second, as noted above, the government offered no proof that Jerry was a drug addict. The only evidence presented was that on several occasions Jerry had used drugs. In response to the suggestion made by the government to Frederick that Jerry was an addict, Frederick stated that, to his knowledge, Jerry was not. Third, even if it had been established that Jerry was an addict, the government offered no proof that Jerry needed money to support an addiction. Finally, for the government to posit that, because Frederick supported his drug addiction by robbing banks, it must follow that Jerry did the same, is an untenable leap in logical reasoning. Thus, the district court erred in allowing this testimony into evidence to show Jerry's motivation to commit the bank robbery.
 
 
 25
 Likewise, the court erred in admitting testimony that Jerry had escaped from a halfway house. The government contends that this evidence goes to prove Jerry's opportunity to commit the crime. However, because Jerry never claimed that he had no opportunity because he was in the halfway house, opportunity was not a material issue in controversy. The government again argues that because Frederick lied during cross-examination about seeing Jerry after his escape, it was the defense that raised the issue of Jerry's whereabouts during that time period. Again, this is flawed reasoning.
 
 
 26
 In essence, the government raised defense arguments during its cross-examination of the defense witness, then claimed to have a right to rebut them. Because the defense raised no material issue of motive or opportunity, the government had no grounds on which to introduce evidence of the defendant's prior bad acts under 404(b).
 
 
 27
 III. Fed.R.Evid. 403 balancing test.
 
 
 28
 Assuming, arguendo, that the evidence was relevant, whatever probative value the evidence of Jerry's drug use and escape may have had was substantially outweighed by its prejudicial impact on the jury. We recognize that "drug addiction is an issue fraught with potential prejudice." United States v. Kizer, 569 F.2d 504, 506 (9th Cir.1978).
 
 
 29
 Jerry was not charged with any drug crime. The large amount of evidence that was presented during both the government's cross-examination of Frederick Menefee and during the government's direct examination of the law enforcement officers could easily have confused the jury about the nature of the crime charged. At a minimum, it certainly could have led the jury to believe that the important thing was to get Jerry behind bars.
 
 
 30
 In addition, the trial court failed to articulate the requisite Rule 403 balancing test. "[I]f it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of the proferred evidence" then the appellate court will not require a "mechanical recitation" of the 403 test. United States v. Green, 648 F.2d 587, 592-593 (9th Cir.1981) (quoting United States v. Sangrey, 586 F.2d 1312, 1315 (9th Cir.1978)). However, where "the record does not disclose that the trial judge performed the necessary weighing ... the deference customarily accorded the trial court's ruling is inappropriate." Id. at 593.
 
 
 31
 Here, the record indicates that the court did not consider the potential prejudicial effect on the jury. Its only consideration seemed to be that the jury should hear all of the inadmissible testimony because the defendant would not be testifying.[4] Thus, the court's failure to articulate the balancing test is a further abuse of its discretion concerning the evidence offered at trial. "While certain errors, considered in isolation, might constitute 'harmless' error, when considered [cumulatively]" they cannot be so considered. Id. at 593.
 
 
 32
 IV. In-court identification testimony.
 
 
 33
 We review in-court identification testimony for an abuse of discretion. United States v. Browne, 829 F.2d 760, 764 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988). Specifically, we inquire whether the procedure for identification was so "unnecessarily suggestive and conducive to irreparable misidentification" that it constitutes a violation of due process. Id. (quoting Stovall v. Denno, 388 U.S. 293 (1971)).
 
 
 34
 Near the close of trial, the district court ordered Jerry and Frederick to stand side by side in front of an eyewitness. The witness specifically identified Jerry Menefee as the robber. Jerry contends that the means of in-court identification was improper because Frederick's appearance had allegedly changed substantially since the day of the robbery due to his 40-50 lb. weight gain. However, Jerry provides no evidence showing that the method of in-court identification used was unnecessarily suggestive or conducive to misidentification. Thus, we find no error on this basis.
 
 CONCLUSION
 
 35
 The evidence concerning Jerry Menefee's drug use and escape from the halfway house was inadmissible to prove his motive or opportunity under Rule 404(b), or to impeach Frederick Menefee's testimony. In addition, the court failed to consider the prejudicial impact of the evidence on the jury. Although the jury heard substantial evidence pointing to Jerry Menefee's involvement in the bank robbery, the government's case was far from conclusive.[5] It is incredible to think that the above errors did not materially effect the jury's verdict. Accordingly, the errors are not harmless.
 
 
 36
 REVERSED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 2113(a) states in relevant part:
 Whoever, by force and violence, or by intimidation, takes, ... from the person or presence of another, ... any property or money or any other thing of value belonging to, or in the care, ... or possession of, any bank ...
 * * *
 [s]hall be fined not more than $5,000.00 or imprisoned not more than twenty years, or both.
 
 
 [2]
 These charges were later dropped
 
 
 [3]
 We note that there is a second category of facts which are not considered "collateral," and thus may be proved by extrinsic evidence to impeach a witness. These include facts showing bias, interest, conviction of a crime, and want of capacity or opportunity for knowledge. Facts showing misconduct of the witness, for which there has been no conviction, are not within this category. They are considered collateral, and if denied on cross-examination, cannot be proved by extrinsic evidence to contradict the witness' testimony. Id. at 111. Here, Frederick's testimony about Jerry's drug use and arrest were not offered to show bias, interest, conviction of a crime, or want of capacity or opportunity for knowledge. Therefore, extrinsic proof of Frederick's conduct was impermissible
 
 
 [4]
 This raises the additional issue of whether the trial court unduly burdened Jerry's 5th Amendment right against self-incrimination by basing its decision concerning the admissibility of evidence in part on the fact that he did not testify. It would seem that whether or not a defendant is planning to testify is irrelevant to whether evidence is admissible against him
 
 
 [5]
 Despite the eyewitness identification, the defendant's case included the confession offered by Frederick Menefee, who had been implicated in over 30 other bank robberies and was at the time serving a sentence of 14 years for bank robbery in federal prison